# In the United States Court of Federal Claims

No.  12-125C
(Filed:  June 5, 2014)

| | |
|---|---|
| JAMES H. WOLLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

10 U.S.C. §1201; Military Disability
Retirement; Existed Prior to Service,
"EPTS"; Presumption of Incurrence
and Aggravation; 28 U.S.C. §
1491(a)(2)

*Jason Ellis Perry*, Cheshire, CT, for plaintiff.

*Michael D. Snyder*, Civil Division, United States Department of Justice, Washington, DC, with whom was *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, for defendant.

## O P I N I O N

**FIRESTONE**, *Judge*.

Pending before the court are the parties' cross-motions for judgment on the administrative record regarding James H. Wollman's ("Mr. Wollman" or "plaintiff") entitlement to disability retirement compensation and benefits under 10 U.S.C. § 1201 (2012),[1] following a remand in 2013.[2]  Mr. Wollman claims that under the various

---

[1] In general, § 1201 provides that a member of the armed services may be entitled to disability benefits if, <u>inter alia</u>, the member is found unfit for duty due to an injury or disease that was incurred or aggravated in the line of duty.

[2] See <u>Wollman v. United States</u>, 108 Fed. Cl. 656 (2013).

regulations governing military disability determinations, he should have received a disability retirement after the Army diagnosed him in 2005 as suffering from Ankylosing Spondylitis ("AS" or "Ankylosing Spondylitis")[3] and determined that the back pain he suffered due to AS made him medically unfit for continued military service.  The Army discharged Mr. Wollman without disability retirement benefits in 2006.

The government initially argued before this court that Mr. Wollman was not entitled to a disability retirement because AS is "hereditary in nature" and Mr. Wollman failed to rebut the resulting regulatory presumptions that his condition (1) was incurred prior to his entry into service and (2) was not permanently aggravated by that service. See Def.'s Cross-Mot. J. 28-29, ECF No. 11 (June 21, 2012); Def.'s Reply 4 n.3, ECF No. 18 (Aug. 31, 2012).[4]  Under the subject regulations, if Mr. Wollman's illness is not hereditary in nature, the government would have had the burden of rebutting the opposite presumptions: namely, that his disease was incurred in the line of duty and that his

---

[3] Ankylosing Spondylitis is "a form of degenerative joint disease that affects the spine.  It is a systemic illness of unknown etiology, affecting young persons predominantly, and producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints . . . ." Dorland's Illustrated Medical Dictionary 1754 (32d ed. 2012).  AS typically presents as low back pain of insidious onset.  See Remand Administrative Record ("RAR") 26.

[4] A service member is not entitled to the presumption that a medical condition discovered after entering active duty was incurred in the line of duty or service-aggravated in instances of congenital, hereditary, or genetic diseases.  See Department of Defense Instruction ("DoDI") 1332.38 (November 1996) ¶¶ E3.P4.5.2.2, E3.P4.5.2.3; Army Regulation ("Army Reg.") 635–40 (September 1990) ¶¶ 3–2(a)(2), B–10(c).

military service caused any permanent worsening of the disease.[5]  See Wollman, 108

Fed. Cl. at 659-62 (discussing application of regulatory presumptions).

On February 6, 2013, the court remanded the case to the Army Physical Disability

Review Board ("APDRB" or "the board")[6] to determine whether the Army had properly

applied the relevant presumptions concerning service-incurrence and aggravation.

Although AS is associated with a "genetic predisposition," the court found that the record

did not establish that AS is a hereditary disease as the government had argued.  Because

the Army had placed the burden of proving service aggravation on Mr. Wollman, which

would have been proper only if AS is a hereditary disease, the court could not determine

whether the APDRB had properly adjudicated Mr. Wollman's claim.  See Wollman, 108

Fed. Cl. at 672 n.39, 673.

The court ordered the APDRB, on remand, to (1) determine whether AS could

properly be characterized as a congenital, hereditary, or genetic disease (as the

government had argued), and (2) if the disease could not be so characterized, to

determine whether the Army had met its burden of demonstrating that Mr. Wollman's AS

existed prior to service ("EPTS")[7] and that any permanent worsening[8] of his disease was

---

[5] Except for congenital, hereditary, or genetic conditions, active duty soldiers are generally entitled to the rebuttable presumptions that (1) medical conditions discovered after entering active duty were incurred in the line of duty, and (2) any additional disability or aggravation of that or some other medical condition was in the line of duty and therefore potentially compensable.  See DoDI 1332.38 ¶ E3.P4.5.2.2; Army Reg. 635–40 ¶¶ 3–2(a)(1)–(3).

[6] Like the Army Board of Corrections for Military Records, the APDRB was established pursuant to 10 U.S.C. §§ 1552, 1554, and possesses the same powers as those exercised by the boards whose decisions it reviews.  See 32 C.F.R. § 581.1(a) (2013).

[7] Army Reg. 600–8–4's glossary defines EPTS as follows:

not caused by military service (i.e., that any aggravation was due to the natural

progression of his disease).  The court also required the APDRB to address the

overwhelming evidence in the record that showed that, prior to 2005, Mr. Wollman's

military and civilian physicians had repeatedly ruled out AS as the cause of his back pain;

as well as the fact that plaintiff had repeatedly passed his physical fitness tests through at

least 2002.  The court also instructed the APDRB to provide Mr. Wollman with an

opportunity to respond to its findings before making any final determination.

On September 4, 2013, the APDRB—without providing Mr. Wollman with any

opportunity to respond to its findings—rendered a second decision denying his claim for

disability benefits.  In the September 4 decision, the board did not address the issues

identified in the remand order.  Instead, the APDRB—for the first time—asserted that

Mr. Wollman had actually been found unfit due to a symptom of AS: "chronic back

pain."  Without addressing the cause of Mr. Wollman's back pain or evidence suggesting

---

Any injury, disease, or illness, to include the underlying causative condition,
which was sustained or contracted prior to the present period of [Active Duty] or
authorized training, or had its inception between prior and present periods of
[Active Duty] or training is considered to have existed prior to service.  A medical
condition may in fact be present or developing for [some time] prior to the point
when it is either diagnosed or manifests symptoms.  Consequently, the time at
which a medical condition "exists" or is "incurred" is not dependent on the date of
diagnosis or when the condition becomes symptomatic.  (Examples of some
conditions which may be pre-existing are slow-growing cancers, heart disease,
diabetes, or mental conditions, which can all be present well before they manifest
themselves by becoming symptomatic.)

See Army Reg. 600–8–4 (April 2004) at 27.

[8] DoDI 1332.38 defines "Service Aggravation" as "[t]he permanent worsening of a pre-[s]ervice
medical condition over and above the natural progression of the condition caused by trauma or
the nature of [m]ilitary [s]ervice."

that he contracted AS during his military service, the APDRB concluded that plaintiff was not entitled to compensation because he had suffered from back pain prior to entering military service.  The board also asserted that there was no evidence that plaintiff's military service had permanently aggravated this pain.  The board's decision was approved by the Assistant Secretary of the Army for Manpower and Reserve Affairs on September 18, 2013.  The cross-motions presently before the court address whether the Army's decision following remand was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

For the reasons that follow, plaintiff's motion for judgment on the administrative record is **GRANTED**, and the government's cross-motion for judgment on the administrative record is **DENIED**.

## I.    BACKGROUND[9]

The court's prior opinion presented a detailed review of the facts surrounding plaintiff's medical history and disability processing, including the military's extensive findings regarding Mr. Wollman's AS.  Wollman, 108 Fed. Cl. at 662-70.  In the interest of judicial economy, the court repeats only that which is necessary to resolve the motions before the court.

### a.  Mr. Wollman's service and medical history

Mr. Wollman enlisted in the Reserve Officer Training Corps ("ROTC") program on August 23, 1993, and was commissioned into the United States Army on May 8, 1998.

---

[9] This background statement of facts is taken largely from the court's prior opinion and the administrative record ("AR") associated with that opinion.  Citations to the RAR refer solely to the administrative record prepared following the APDRB's remand decision.

Plaintiff served on active duty in the Field Artillery and was deployed to Iraq from May 6, 2003 until June 10, 2004. Mr. Wollman claims that he suffered from several gastrointestinal infections while serving in Iraq, which were followed by a severe worsening of his back pain.[10] RAR 178. After attaining the rank of captain, Mr. Wollman was discharged on February 24, 2006. Wollman, 108 Fed. Cl. at 662.

Mr. Wollman fractured his pelvis as a child, and suffered from lower back pain both before and after he entered active duty in 1998. Id. at 662-70; RAR 219. Between November 1994 and January 2005, plaintiff received numerous medical examinations from civilian and military physicians in an effort to identify the source of this pain and, in some cases, to determine whether he suffered from AS. Many of these examinations involved the analysis of X-rays, computed tomography scans ("CT scans"), and magnetic resonance imaging ("MRI") of plaintiff's back, and most (if not all) of his treating physicians were fully aware that he was predisposed to AS given his HLA-B27 positivity.[11] Notwithstanding these examinations, Mr. Wollman never received an AS diagnosis prior to 2005. In fact, several of his physicians expressly ruled out an AS diagnosis after examining medical imaging of his spine and/or hips.[12]

---

[10] The Army has been unable to locate the medical records from Mr. Wollman's tour in Iraq. As a result, there is no record evidence that either confirms or undermines Mr. Wollman's testimony concerning his health in Iraq.

[11] As explained in Wollman, plaintiff tested positive for the HLA-B27 antigen in early 1995. 108 Fed. Cl. at 662 n.13. The HLA-B27 antigen is strongly associated with the development of arthritic processes and indicates increased susceptibility to AS. Id. at 663 n.16.

[12] The following is a chronology of Mr. Wollman's examinations:

- On November 15, 1994, Mr. Wollman's civilian physician indicated that Mr. Wollman had fallen at the age of 5 and injured his pelvis.  The physician, after reviewing an X-ray, stated that he saw signs of a previously healed hip fracture.  AR 152.

- On January 5, 1995, Mr. Wollman's civilian physician "reviewed his LS spine films again" and concluded that it would be "difficult to make the diagnosis of [A]nkylosing [S]pondylitis."  AR 153.

- On March 9, 1995, a civilian physician wrote "X-rays brought in by the patient showed a pelvis [X]-ray.  Difficult to interpret the SI joints on this film. They were not well-placed on the film.  Hips look unremarkable.  Lumbosacral spine did not show any signs of squaring or characteristic changes of [A]nkylosing [S]pondylitis."  AR 158.

- On March 17, 1995, Mr. Wollman received a military "fitness for duty" evaluation, in which the military physician acknowledged the potential for Ankylosing Spondylitis, but concluded that the lack of objective findings and frequent complaints could be better explained as "poor exercise tolerance."  AR 160-62.  Mr. Wollman was subsequently determined to be "medically qualified" and permitted to continue participation in ROTC.  AR 163-64.

- On June 12, 1996, Mr. Wollman received a military entry physical examination in which he was described as a "normal healthy male" and his upper extremities and spine were listed as normal.  AR 338.

- In April 2000 and again in January 2001, a military medical facility took X-rays of Mr. Wollman's back and concluded "the vertebral body heights and intervertebral disc spaces are well preserved.  There is no evidence of fracture or dislocation.  The alignment is normal.  The visualized portions of the abdomen and pelvis are unremarkable."  AR 245-46.

- On May 15, 2001, the military performed a CT scan of Mr. Wollman's back.  The radiologist identified a "mild diffuse disc bulge at L4-5," but found no other radiographic abnormalities.  AR 242.

- On October 3, 2001, the military performed another X-ray of Mr. Wollman's back <u>for the specific purpose of identifying any changes seen with Ankylosing Spondylitis</u>.  The physician concluded that "[t]here is no evidence of bambooing of the lumbar spine or changes suggestive of [A]nkylosing [S]pondylitis presently."  AR 244.

- On October 29, 2001, Mr. Wollman underwent an MRI exam at a civilian medical facility.  The radiologist identified a "tiny central protrusion at L5/S1" and concluded that Mr. Wollman had mild spondylosis.  AR 241.  Spondylosis is a general term for "degenerative spinal changes due to osteoarthritis."  See <u>Dorland's Illustrated Medical Dictionary</u> 1754 (32d ed. 2012).

- On January 10, 2005, Mr. Wollman received an X-ray from a military medical facility.  The radiologist's found "erosions and subchondral sclerosis . . . arising from the sacroiliac joints," and concluded that Mr. Wollman was suffering from sacroiliitis.  AR 243.  The physician, apparently erroneously, indicated that Mr. Wollman had previously been diagnosed with AS.

On June 10, 2005, Mr. Wollman received a permanent medical profile from the Army that indicated that he was no longer physically able to perform certain functional activities (e.g., wear body armor, receive live immunizations, or carry a 45-pound pack). RAR 338.  Over the next two months he underwent further medical evaluation, including a rheumatology consultation on July 19, 2005 in which Mr. Wollman—for the first time—received a diagnosis of "Ankylosing Spondylitis manifested by HLA B27 positivity, bilateral Sacroiliitis . . . ."  RAR 321-27; see Wollman, 108 Fed. Cl. at 662-63. This diagnosis was based upon Mr. Wollman's medical history, prior laboratory data and imaging studies, as well as a physical exam by the military rheumatologist.[13]  Mr. Wollman's Medical Evaluation Board ("MEB") was conducted the following day.  The board concluded that Mr. Wollman suffered from AS, that the condition existed prior to service (i.e., was EPTS), and that his AS had been permanently aggravated by service. Mr. Wollman concurred in the result of his MEB, and his matter was forwarded to a PEB.

### b.  Mr. Wollman's disability processing

On October 7, 2005, Mr. Wollman's Formal PEB met and concluded that Mr. Wollman was unfit for military service and recommended that he be separated from the service without disability benefits.  In the form used to document the PEB's decision, the PEB assigned plaintiff's disability the Veterans Administration Schedule for Rating

---

[13] The rheumatologist erroneously stated that Mr. Wollman received a waiver for his back pain at the time of entry onto active duty.  Wollman, 108 Fed. Cl. at 663 n.15.  In fact, Mr. Wollman's entry physical described him as a "normal healthy male," and specifically listed both his upper extremities and spine as being normal.  AR 338-39.  The division surgeon from Mr. Wollman's unit would later seek, unsuccessfully, to have plaintiff's Physical Evaluation Board ("PEB") withdrawn because of the potential prejudice caused by the waiver statement.  Id. at 667-68.

Disabilities ("VASRD") code of "5240," which corresponds to Ankylosing Spondylitis.

In the section of the form used to describe the disability, the PEB stated as follows:

> Chronic [b]ack [p]ain first noted while undergoing ROTC evaluation.  The Soldier received a waiver [14] for the back discomfort as he was suspected in 1995 of having Ankylosing Spondylitis, <u>which is the current unfitting diagnosis</u>.  There is no history of trauma/injury while on active duty. . . . There is no evidence of permanent service aggravation.  (MEB Dx)[.[15]]

> The PEB has reviewed the medical evidence of record and concludes that there is sufficient evidence to substantiate an EPTS (existed prior to service) condition for which you are now unfit.  Your condition has not been permanently aggravated by service but is the result of natural progression.

AR 237 (emphasis added).  Thus, while accepting that Mr. Wollman had AS, the PEB

concluded—contrary to the MEB's earlier finding—that Mr. Wollman's AS had not been

aggravated by service.  Notably, the PEB did not address the fact that in October 2001—

prior to his deployment to Iraq and reported gastrointestinal infections—Mr. Wollman's

physicians expressly concluded that he was not suffering from AS.  Plaintiff did not

concur with the PEB's findings.

Plaintiff subsequently embarked on various unsuccessful attempts to overturn the

Formal PEB's decision, including appealing to other Army review boards and enlisting

the support of one of his United States Senators.  See <u>Wollman</u>, 108 Fed. Cl. at 664-70.

Following a March 9, 2007 APDRB opinion, which affirmed that Mr. Wollman's

disability was EPTS and was not service-aggravated, plaintiff timely filed suit in this

---

[14] As noted above, it is undisputed that the PEB's notation was erroneous because Mr. Wollman had not received an entry waiver for any medical condition.

[15] The court understands the phrase, "MEB Dx" as referring to the earlier MEB's diagnosis that Mr. Wollman's condition had been permanently aggravated by his military service.

court on February 23, 2012.  Plaintiff's complaint asserted, inter alia, that the PEB's

conclusion that his AS was EPTS had been tainted by the MEB's erroneous statement

that he had received an entry waiver for AS when he entered the service, and that the

Army had failed to apply the proper regulatory presumptions concerning service-

incurrence and service-aggravation.

As discussed above, on February 6, 2013 this court issued an opinion that

remanded the case back to the APDRB in order to determine whether—and on what

basis—the Army had determined that AS constituted a congenital, hereditary, or genetic

disease (as the government argued in support of the APDRB's first decision).  The court

concluded that without this information, it was not possible to assess whether the agency

properly adjudicated Mr. Wollman's claim.  The court incorporated the regulatory

provisions relevant to the case in its directions to the APDRB:

> On remand, the APDRB must determine whether AS can be properly
> characterized as a congenital, hereditary, or genetic disease and, if so, the
> basis for that conclusion.  If the APDRB concludes that "genetic
> predisposition" or "susceptibility" is not synonymous with a genetic
> disease, then the APDRB will need to carry its burden of showing that Mr.
> Wollman's AS was EPTS and that any worsening of his disease was not
> due to military service.  Should this analysis prove necessary, the board
> should also address (1) the undisputed fact that the plaintiff continued to
> pass his Army Physical Fitness Tests until at least October 24, 2002; and
> (2) that the plaintiff's military physicians concluded that Mr. Wollman's X-
> ray, CT, and MRI results did not indicate that he had contracted AS until
> January 2005.  In addition, Mr. Wollman should be provided an opportunity
> to respond to the board's findings.  To the extent that the APDRB primarily
> relies on "accepted medical principles" to reach its conclusions, the board
> should provide the sources or principles relied upon to Mr. Wollman prior
> to rendering a final decision.

Id. at 673-74.

### c.   The APDRB's decision on remand

On September 4, 2013, the APDRB issued an opinion in which it claimed to "affirm" the PEB's decision that Mr. Wollman's unfitting medical condition was not compensable because it was EPTS and had not been aggravated by his military service. See RAR 3-15.  As noted above, in reaching this conclusion, the APDRB did not address whether AS is a congenital, hereditary, or genetic disease, which would have triggered certain presumptions.  Rather, and as explained in greater detail below, the board (1) described Mr. Wollman's unfitting condition as "chronic back pain," (2) concluded that Mr. Wollman's "chronic back pain" existed prior to service, and (3) determined that Mr. Wollman's "chronic back pain" was not permanently aggravated as a result of his military service.

### i.   APDRB's findings as to the etiology of AS

The APDRB did not address whether AS was a congenital, hereditary, or genetic disease.  Instead, the APDRB observed:

> It is clear in Court documents that the etiology of AS is of prime concern. Because the etiology of AS was not a finding or decision of the board under review . . . the APDRB finds no Army or Government position with which to concur or non-concur.
>
> . . .
>
> The APDRB finds nothing in the record to indicate that the applicant inherited anything other than the susceptibility to AS and finds no previous PEB or [United States Army Physical Disability Agency ("USAPDA")] finding to the contrary.

Id. at 14.

### ii. APDRB's re-characterization of Mr. Wollman's unfitting medical condition

Despite conceding that "[t]he only condition referred to the PEB by the Medical Evaluation Board . . . as having failed to meet retention standards was Ankylosing Spondylitis," id. at 8, the APDRB elected to re-label his disability as "chronic back pain." The board reasoned:

> [i]n reality, Ankylosing Spondylitis per se does not fail retention standards. Apparently the condition that failed retention standards because it rendered the Soldier incapable of performing the duties of his [Military Occupational Specialty ("MOS")] was back pain (secondary to Ankylosing Spondylitis).
>
> . . .
>
> [T]he PEB determined that the unfitting condition was chronic back pain acknowledging that the current unfitting diagnosis was Ankylosing Spondylitis. . . . The APDRB concurs with the PEB finding.

Id.  Recognizing that the PEB had, in fact, assigned Mr. Wollman the VASRD code associated with Ankylosing Spondylitis, the APDRB explained:

> There are a host of codes that could have been used for back pain of other etiologies but in this case the back pain was attributed to AS and the specific code for AS is 5240.  The APDRB concurred that the applicant was unfit due to chronic back pain and that the appropriate VASRD code was 5240, Ankylosing Spondylitis.

RAR 9.

### iii. APDRB's conclusion that Mr. Wollman's unfitting condition was EPTS and not permanently aggravated by service

Without citing to any accepted medical principles or requesting additional medical evidence or opinion, the APDRB asserted that the evidence was "overwhelming" that his

back pain was the same back pain as he suffered prior to entering active duty.  Id. at 14.

In reaching this conclusion, the board acknowledged

> that back pain is not rare and [Mr. Wollman] could have had back pain in
> 1995 that was not in any way related to the back pain for which he was
> separated in 2006.  There was considerable evidence, however, that the
> applicant's unfitting condition, i.e. chronic back pain, existed prior to
> service and that that back pain was eventually discovered to be secondary
> to AS.

Id. at 9-10.  The only evidentiary basis for the board's conclusion that plaintiff's 1995

and 2005 back pain were the same was (1) the fact that plaintiff reported suffering from

some degree of back pain from at least 1995 through at least 2005, and (2) the fact that

Mr. Wollman did not contest the MEB's initial finding that his AS existed prior to service

and was service-aggravated.  See id. at 9-11.  Specifically, the APDRB noted:

> in [a] sworn statement in 2007 . . . [Mr. Wollman] reported that for the next
> 4 years his pain stayed the same.  That is, the pain he had in 1995 he still
> had in 1999.  The pain that existed prior to service was continuous and
> unchanged after entry on active service. . . . The pain currently under
> assessment had been going on for 7-8 years.  The pain currently being
> discussed was first noted in ROTC in 1995.  The APDRB determined that
> the history is clear that this was not a new pain and that it existed prior to
> service.  The MEB determined that the condition that now failed to meet
> retention standards existed prior to service and the applicant concurred.[16]
> The APDRB concurs with the PEB determination that [Mr. Wollman's]
> unfitting condition existed prior to service.

Id. at 11.[17]

---

[16] As explained in the court's prior opinion, at no point after the PEB's decision to overturn the
MEB's finding of service-aggravation has plaintiff ever conceded that his disease was EPTS.
See Wollman, 108 Fed. Cl. at 665 n.24.

[17] The court notes that the board suggested in passing—without expressly finding—that Mr.
Wollman's AS might have pre-dated his entry onto active duty.  This suggestion was based on a
portion of a rheumatologist's report dated January 23, 2007, which stated that Mr. Wollman did
not have AS until he began to suffer from back pain in 2002.  RAR 10 (citing AR 115).

After acknowledging that there "is no objective information available that speaks to the applicant's current condition," the APDRB concluded that Mr. Wollman's back pain was not permanently aggravated by his military service.  Id.  In so finding, the board emphasized that Mr. Wollman's symptoms appeared to lessen when he ceased wearing body armor and began taking medication, including Vioxx and Enbrel.  The board also noted that certain X-ray changes that had previously confirmed the presence of sacroiliitis were not apparent in later X-rays.  Id. at 11-14.

### d.  Finalization of the APDRB's decision and the instant motions

Without allowing plaintiff an opportunity to comment on the APDRB's findings, the board forwarded its decision to the Assistant Secretary of the Army for Manpower and Reserve Affairs ("Assistant Secretary"), who approved the decision on September 18, 2013.[18]  On October 25, 2013, counsel for the government represented to this court that "the board's decision adequately addresses the Court's instructions on remand and . . . . the decision is legally and factually sound."  Joint Status Report, ECF No. 39 (Oct. 25,

---

[18] The decision memorandum summarized the Assistant Secretary's findings as follows:

> Mr. Wollman was unfit for continued service due to back pain.  This back pain was noted prior to his entry in the Army by physicians at Fort Sill and by the United States Army Cadet Command Surgeon.  Although eventually found to be secondary to a disease known as Ankylosing Spondylitis, which is not itself per se unfitting, and for which a susceptibility may be inherited, Mr. Wollman's pre-existing back pain became unfitting, but was not permanently aggravated by his military service.  While wear of Individual Body Armor exacerbated his back pain, the evidence tended to show that Mr. Wollman responded well to treatment, any increase in pain was temporary, and he was able to resume normal activities.  Accordingly, Mr. Wollman was not entitled to disability separation pay or disability retirement as his unfitting condition was not compensable.

RAR 1.

2013).  Following a joint status conference, the court set a briefing schedule for the

parties' cross-motions for judgment on the administrative record.

On February 3, 2014—approximately one month <u>after</u> plaintiff filed its motion for

judgment on the administrative record—the government moved for a voluntary remand

back to the APDRB.  Def.'s Mot. to Remand, ECF No. 49.  In that motion, the

government acknowledged that "the board did not explicitly state the rationale for all of

its findings."  <u>Id.</u> at 3.  The motion suggested that remand was appropriate because the

APDRB may have failed to make a finding as to the etiology of AS, address appropriate

evidence concerning the time and origin of Mr. Wollman's disease, or provide Mr.

Wollman with an opportunity to respond to its findings—all of which had been expressly

required by the court's remand instructions.  <u>Id.</u>  In light of the government's prior

representations concerning the sufficiency of the APDRB's decision, coupled with the

prejudice to plaintiff, the court denied the government's motion.  Order, ECF No. 50.

Briefing was completed on April 1, 2014, and oral argument was held on May 22, 2014.

## II. DISCUSSION

### a.  The relevant statutory and regulatory framework

Chapter 61 of Title 10 provides that a member of the armed services may be

entitled to disability benefits if, <u>inter alia</u>, the member incurs or aggravates a physical

disability in the line of duty.  <u>See</u> 10 U.S.C. § 1201.  Conversely, a service member who

is discharged due to a medical condition that was EPTS and was not permanently

aggravated by service is not entitled to disability compensation.  The procedures for

making such determinations are laid out in several complementary Department of

Defense and Army regulations.  See Wollman, 108 Fed. Cl. at 659-62 (reviewing DoDI 1332.38, Army Reg. 635–40, Army Reg. 600–8–4, and Army Reg. 40–501 (February 2005)).  As explained at length in the court's prior opinion, these regulations establish a set of rebuttable presumptions concerning service-incurrence and service-aggravation, the application of which can turn on the etiology of the disease.  Id.; see also Emenaker v. Peake, 551 F.3d 1332, 1339 n.2 (Fed. Cir. 2008) (citing Reese v. United States, 180 Ct. Cl. 932 (1967) and Siegel v. United States, 148 Ct. Cl. 420 (1960) as providing guidance for application of similar regulatory presumptions concerning service-incurrence and aggravation).

In general, service members are presumed to have been in sound physical and mental condition upon entering active duty, except for (1) medical defects and physical disabilities noted and recorded at the time of entrance, or (2) diseases that are hereditary, congenital, or genetic.  As this court previously explained:

> DoDI 1332.38 and Army Reg. 635–40 entitle Mr. Wollman to the presumption that his AS was incurred in the line of duty if (1) his AS was neither noted nor recorded at the time he entered active duty; and (2) AS is not a congenital, hereditary, or genetic disorder.  If both conditions are satisfied, then the government bears the burden of showing by a preponderance of the evidence that Mr. Wollman's AS was EPTS.  This evidence must be based on accepted medical principles,[19] but need not be confirmed by specific reference to Mr. Wollman's medical records.  However, should the government rely primarily on accepted medical

---

[19] Accepted medical principles are defined as "[f]undamental deductions, consistent with medical facts[,] that are so reasonable and logical as to create a virtual certainty that they are correct." DoDI 1332.38 ¶ E2.1.1.  See also Army Reg. 635–40 at 79-80 (glossary defining "Accepted Medical Principles" as "[f]undamental deductions that are consistent with medical facts.  They are accepted for treating and practice in current major text-books and publications").  This evidentiary showing "differs from personal opinion, speculation, or conjecture."  Army Reg. 635–40 ¶ 3–2(a)(5).

principles to reach the conclusion that Mr. Wollman's AS was EPTS, then
those principles must be cited and must show "consistent and universal"
agreement among medical authorities as to the (1) cause and (2) time of
origin of AS.

Wollman, 108 Fed. Cl. at 661 (internal citations omitted).  Thus, because Mr. Wollman

was not diagnosed with AS prior to entering service, as long as AS is not a congenital,

hereditary, or genetic disease, the government bears the burden of rebutting the

presumption of service-incurrence, which requires demonstrating by preponderant

evidence that under accepted medical principles, it was "virtually certain" that his disease

existed prior to service.[20]

Even if the government establishes that Mr. Wollman's AS existed prior to his

entering active service, he is generally entitled to a rebuttable presumption that any

additional disability or aggravation of his AS was in the line of duty and therefore

potentially compensable.  See DoDI 1332.38 ¶ E3.P4.5.2; Army Reg. 635–40 ¶ 3–2(a)(3).

This presumption is not available, however, in the case of congenital, hereditary, or

genetic diseases, and can be rebutted.  As this court previously explained:

[T]he government can rebut the presumption [of service aggravation] by
making a specific finding that a preponderance of the competent medical
evidence establishes that any aggravation of Mr. Wollman's AS was due to
the natural progression of the disease.  This showing can be made by
reference to well-established medical principles alone, and need not
specifically refer to Mr. Wollman's medical records.[21]  By contrast, if AS

---

[20] The court notes that the Federal Circuit has not squarely addressed the line between "personal
opinion" and "accepted medical principles" in the context of the regulations applicable to the
case at bar.

[21] See DoDI 1332.38 ¶ E3.P4.5.2.3 (presumption "may only be overcome by competent medical
evidence establishing by a preponderance of the evidence that the disease was clearly neither
incurred nor aggravated while serving on active duty. . . .  Such medical evidence must be based
on well-established medical principles, as distinguished from personal medical opinion alone").

> is a congenital, hereditary, or genetic disease, then Mr. Wollman bears the burden of showing, with clear documentary evidence, that his condition was service aggravated beyond its natural progression or that he was permitted to continue on active duty after his AS was diagnosed or should have been diagnosed.

Wollman, 108 Fed. Cl. at 661-62.  Thus, as long as AS is not a congenital, hereditary, or genetic disease, any aggravation of Mr. Wollman's AS would presumptively be due to his military service.  To rebut this presumption, the Army would need to cite to either accepted medical principles or evidence in Mr. Wollman's medical files that demonstrate that the aggravation was actually due to the natural progression of AS.  See id.; DoDI 1332.38 ¶ E3.P4.5.2.2; Army Reg. 635–40 ¶ 3–2(a)(3).

### b.  Standard of review

When reviewing a motion for judgment on the administrative record under Rule 52.1(c) of the Rules of the United States Court of Federal Claims ("RCFC"), the court makes factual findings based on record evidence "as if it were conducting a trial on the record."  See Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). Therefore, unlike a motion for summary judgment, the existence of a disputed material fact does not preclude the court from reaching a decision.  Id. at 1355.  Should the administrative record be silent as to some disputed facts, the court may still render judgment if the agency provided an adequate discussion of the bases of its decision.  See Rebosky v. United States, 60 Fed. Cl. 305, 311-13 (2004).

It is well-established that the military is afforded substantial deference in adjudicating disability claims.  Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983).  The court's task is limited to determining whether the board's decision was

arbitrary, capricious, unsupported by substantial evidence, or contrary to law. <u>Cameron v. United States</u>, 550 F. App'x 867, 872 (Fed. Cir. 2013); <u>Barnick v. United States</u>, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

Notwithstanding this deferential standard of review, however, the Army is still "bound to follow its own procedural regulations [once] it chooses to implement some." <u>Murphy v. United States</u>, 993 F.2d 871, 873 (Fed. Cir. 1993); <u>Cameron</u>, 550 F. App'x at 873. Additionally, the Army's decisions must be supported with "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Crawford v. Dep't of the Army</u>, 718 F.3d 1361, 1365 (Fed. Cir. 2013) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

### c. The APDRB's decision to re-label Mr. Wollman's unfitting condition as "back pain" was arbitrary, capricious, and not supported by substantial evidence

Plaintiff contends that the APDRB's decision to ignore Mr. Wollman's AS on remand did not comply with the court's order and was <u>per se</u> arbitrary and capricious. Plaintiff also argues that, as a matter of law, the government waived its right to change the nature of the diagnosis by failing to raise "chronic back pain" as the unfitting condition prior to the remand. In response, the government argues that the APDRB was not bound by its prior findings and was therefore free on remand to ignore Mr. Wollman's prior AS diagnoses and the grounds for denying him disability benefits.

As explained below, the court concludes that the APDRB's decision to ignore Mr. Wollman's prior AS diagnoses and instead find that his unfitting condition was "chronic back pain" was arbitrary, capricious, and unsupported by substantial evidence. Because

the APDRB did not support this new determination with a rational explanation that was

supported by record evidence, the board's decision must be set aside.

### i. The APDRB's decision to re-label Mr. Wollman's unfitting condition as "back pain" lacked a rational basis

The first question that the court must resolve is whether there was a rational basis

for the APDRB's decision to re-characterize the medical disability that caused Mr.

Wollman not to meet the necessary retention standards.  Prior to the APDRB's remand

decision, the MEB, Informal PEB, Formal PEB, and USAPDA issued decisions agreeing

that Mr. Wollman was unfit for continued military service due to the back pain caused by

his AS—decisions that the APDRB previously affirmed.  On remand, however, the

APDRB decided to ignore these decisions by finding Mr. Wollman's unfitting condition

was "chronic back pain" without regard to his AS.  According to the board, "[a]pparently

the condition that failed retention standards because it rendered [Mr. Wollman] incapable

of performing the duties of his MOS was back pain (secondary to Ankylosing

Spondylitis)."  RAR 8.  The APDRB explained that the cause of his back pain was not

relevant because Ankylosing Spondylitis "per se does not fail retention standards."  Id.

The court recognizes the APDRB's right to make a new causation determination

if it is supported by the evidence.  However, the APDRB does not have the right to

ignore—without meaningful discussion—the Army's previously undisputed medical

findings and conclusions regarding the cause of the back pain.  Indeed, a military board's

decision to reverse a previous finding by a disability evaluation board must be explained.

See Istivan v. United States, 689 F.2d 1034, 1039 (Ct. Cl. 1982) (Army Board for

Correction of Military Records' failure to address unexplained change in service member's disability rating was arbitrary and capricious); <u>Craft v. United States</u>, 544 F.2d 468, 474 (Ct. Cl. 1976) (<u>per curiam</u>) (where a military corrections board "suddenly, and without explaining its reasons, reverse[s] a decision by a Physical Evaluation Board . . . [s]uch a determination . . . cannot be sustained"); <u>see also</u> 32 C.F.R. § 581.1(c) (reversal of prior disability determination requires complete written findings).  To allow a board to completely ignore a previously recognized cause of an unfitting medical condition puts military service members at risk of losing their disability retirements simply because their unfitting medical conditions happen to share a symptom(s) with other medical conditions that the member suffered from prior to entering service.[22]

Because the APDRB did not dispute that Mr. Wollman has Ankylosing Spondylitis, the board was not free to simply ignore that diagnosis by relabeling his unfitting condition as "chronic back pain."  Put another way, while the APDRB was free to find another cause for Mr. Wollman's back pain that was supported by the evidence, the board was not free to simply substitute a symptom of Mr. Wollman's illness for the cause.  The cause of Mr. Wollman's back pain is at the crux of his disability entitlement, and the fact that AS does not cause a soldier to "per se" fail retention standards is not a reason to ignore that diagnosed cause.  Moreover, under DoDI 1332.38, a diagnosis of Ankylosing Spondylitis requires referral for military disability evaluation.  DoDI 1332.38

---

[22] For example, it would be improper to deny a disability retirement to a service member who was rendered medically unfit due to a traumatic brain injury that was incurred in the line of duty <u>solely</u> because that member happened to suffer from headaches both prior to entering service and after the head injury.

¶ E4.4.1.2.2.1.  A referral presumably is required because AS can cause back pain and other debilitating symptoms that fail to meet retention standards.  Thus, Mr. Wollman's AS diagnosis required that he be entered into the Army's disability evaluation system, assessed for fitness for continued active duty, and potentially be evaluated for a disability retirement.  Accordingly, the court finds that the APDRB's conclusion that it could ignore Mr. Wollman's AS on the grounds that it is not a "per se" unfitting medical condition was arbitrary and capricious and thus not rational.

### ii.  The APDRB's September 2013 decision is not supported by substantial evidence

The APDRB's decision to re-characterize Mr. Wollman's unfitting condition as "chronic back pain"—and thus EPTS—is also contrary to the evidence in the record.  For the court to uphold the APDRB, the court would need to find that Mr. Wollman's unfitting back pain at discharge is the same back pain he had before he joined the service and thus, as the APDRB contends, his AS diagnosis was irrelevant.  The record evidence simply does not support such a finding.

Contrary to the board's conclusory statements that there was "overwhelming" and "considerable" evidence supporting its conclusions, there is almost nothing in the record to link Mr. Wollman's early back pain with the back pain he was found to have in 2005 in connection with his AS.  The chronology set forth in footnote 12 lays out in detail the numerous times doctors expressly ruled out AS as the cause of Mr. Wollman's back pain before 2005—after he reportedly suffered from several gastrointestinal infections.  The only record evidence that the board cites for such a finding is the fact that in 2007, Mr.

Wollman stated that the pain he suffered from in 1995 "stayed the same" until 1999. However, this finding has no medical merit and does not constitute an accepted medical principle.

There is no question that Mr. Wollman had back pain for many years.  The record establishes, however, that his back pain was attributable to a variety of causes, which may include the fractured pelvis he suffered as a child.  In addition, as discussed above, the record evidence establishes that Mr. Wollman was tested repeatedly for AS but was not diagnosed with AS until 2005.  Importantly, the record further establishes that despite his periodic bouts of back pain, Mr. Wollman was not found unfit for service until after he received the AS diagnosis.  Prior to that time he was able to serve.  Given this record, the APDRB's conclusion that Mr. Wollman's back pain in 1993 was the same back pain he suffered in 2005 is simply contrary to the evidence in the record.  Therefore, the court finds that the APDRB's conclusion that Mr. Wollman's chronic back pain was the same from 1993 to 2005 is not supported by substantial evidence.

### d.  The government has failed to rebut the presumption that Mr. Wollman's AS was incurred in the line of duty

Because Mr. Wollman was discharged due to back pain associated with his AS and the APDRB did not dispute that AS is not a congenital, hereditary, or genetic disease, RAR 13-14 ("The APDRB finds nothing in the record to indicate that the applicant inherited anything other than the susceptibility to AS and finds no previous PEB or USAPDA finding to the contrary"), Mr. Wollman is entitled to the presumptions that his AS was incurred in the line of duty and that any permanent worsening of the disease was

caused by his military service.  Indeed, the government concedes as much.  Def.'s Cross-Mot. J. 4., ECF No. 51.

The government also does not dispute that the board did not identify any evidence in the record to overcome the presumptions favoring Mr. Wollman with regard to his AS-related back pain being service-related.  Because the APDRB on remand elected not to address—and thus failed to rebut—the presumptions of service-incurrence and service-aggravation, the court is required, in accordance with Army regulations, to presume that Mr. Wollman's AS was incurred in the line of duty and that, to the extent that he is rated for a disability, entitled to receive a disability retirement based on his rating.[23]

## III.    CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the administrative record is **GRANTED**, and the government's cross-motion is **DENIED**.  The court **ORDERS** the parties to file a joint status report no later than **June 30, 2014**, regarding the next steps the government will be taking to rate Mr. Wollman and ultimately determine his disability entitlement, if any.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

[23] In this connection, this is not a case in which the "court simply cannot evaluate the challenged agency action on the basis of the record . . . ." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).  Because the APDRB on remand elected not to introduce any evidence to overcome the presumptions of service-incurrence and aggravation, a second remand is not necessary or appropriate.