# In the United States Court of Federal Claims

No. 12-125C
(Filed:  August 18, 2015)

|  |  |  |
|---|---|---|
| JAMES H. WOLLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Equal Access to Justice Act, 28 U.S.C. |
| | ) | § 2412; Government Position Not |
| v. | ) | Substantially Justified; Reduction for |
| | ) | Partial Success on Merits |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Jason E. Perry*, Wellington, FL, for plaintiff.

*Michael D. Snyder*, United States Department of Justice, Civil Division, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director.  *Capt. Christopher J. Koschnitzky*, of counsel.

## OPINION AND ORDER

*Firestone*, Judge.

Pending before the court is the application for attorney's fees and costs filed by plaintiff James H. Wollman ("Mr. Wollman") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  Plaintiff seeks $50,014.60 in attorney's fees and $578.22 in costs, arguing that the position of defendant the United States ("the government") in this litigation was not substantially justified.  According to Mr. Wollman, this lack of justification is demonstrated by the court's finding that the decision of the Army Physical Disability Review Board ("APDRB") was arbitrary, capricious, and

not supported by substantial evidence.  In response, the government argues that the government's position was substantially justified under the governing standards, and the fact that plaintiff prevailed in the litigation is not enough to support an award under EAJA.

For the reasons below, the application is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.      BACKGROUND

The history of plaintiff's case against the government is detailed in the court's two prior opinions: Wollman v. United States, 108 Fed. Cl. 656 (2013) ("Wollman I") and Wollman v. United States, 116 Fed. Cl. 419 (2014) ("Wollman II").  In his complaint, plaintiff alleged that he was entitled to compensation and benefits stemming from various medical conditions—namely, plantar fasciitis, a wrist injury, and ankylosing spondylitis ("AS").  On the government's motion for judgment on the administrative record, the court found that plaintiff had waived his claims for compensation and benefits in connection with his alleged plantar fasciitis and wrist injury but remanded the case to the APDRB on the remaining AS claim, finding that the record had not been fully developed to permit a decision by the court.  Specifically, the court ordered the APDRB to determine whether the "genetic predisposition" element of AS categorized it as a genetic disease and, accordingly, what the proper burdens of proof should be.[1]  Wollman I, 108

---

[1] The court also denied plaintiff's request to be restored to active duty pending review of his claims on the grounds that his exclusive remedy would be disability pay.  Wollman I, 108 Fed. Cl. at 674-75 (citing Barnick v. United States, 591 F.3d 1372, 1379 (Fed. Cir. 2010)).

Fed. Cl. at 673-74.  The court additionally asked the APDRB to address the fitness tests that plaintiff passed and the findings of military physicians that plaintiff had not contracted AS until January 2005.  Id.  The court required that plaintiff be provided an opportunity to respond to the APDRB's findings and that he be provided with sources or principles for any "accepted medical principles" used to reach a final decision.  Id. at 674.

On remand, the APDRB elected not to address the issues identified in the court's order.  Wollman II, 116 Fed. Cl. at 421.  Rather, in a September 4, 2013 decision, it changed the grounds for its decision, finding that Mr. Wollman's back pain itself pre-existed his service and was a sufficient ground for separation because there was no evidence that the back pain had been permanently aggravated by military service.  Id. The APDRB did not provide an opportunity for plaintiff to respond to its decision on remand.  Id.  The government then filed a status report with the court informing it of the APDRB's decision and representing "that 'the board's decision adequately addresses the Court's instructions on remand and . . . the decision is legally and factually sound.'"  Id. at 426 (quoting Joint Status Report, ECF No. 39).  On February 3, 2014, however, the government asked for a voluntary remand to allow the agency to analyze the issues identified by the court in its order.  Def.'s Mot. to Remand, ECF No. 49.  The court denied the government's remand request, Order, ECF No. 50, and thereafter ruled that the agency decision on remand was arbitrary, capricious, and unsupported by substantial evidence, Wollman II, 116 Fed. Cl. at 428-30.  Accordingly, the matter was remanded again to the APDRB for further proceedings.  On the second remand, the APDRB assigned Mr. Wollman a 10% disability rating, based on his AS.  See Joint Status Report,

ECF No. 58.  On December 3, 2014, the parties stipulated to the dismissal of the case.

Stipulation, ECF No. 68.

## II.    STANDARD OF REVIEW

In order to award attorney's fees and costs under EAJA, the court must find that

(1) the fee application was submitted within 30 days of final judgment in the action and

be supported by an itemized statement; (2) at the time the civil action was initiated, the

applicant, if an individual, was not valued at more than $2,000,000 in net worth; (3) the

applicant was the "prevailing party" in a civil action brought by or against the United

States; (4) the government's position was not "substantially justified;" and (5) no special

circumstances exist that would make an award unjust.  28 U.S.C. § 2412(d)(1)(A), (B);

see also Comm'r, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 158 (1990);

United Partition Sys., Inc. v. United States, 95 Fed. Cl. 42, 49 (2010); ACE Constructors,

Inc. v. United States, 81 Fed. Cl. 161, 164 (2008).

## III.   DISCUSSION

### A.    Plaintiff Meets the Criteria for an EAJA Award of Attorney's Fees and Costs

In this case, the only dispute between the parties concerns whether the government's

position in the litigation was substantially justified.  Plaintiff argues that the government's

position was not substantially justified because the government did not prevail in the

rejection of plaintiff's disability claim based on his AS diagnosis.  Specifically, plaintiff

focuses on the court's 2014 finding that the APDRB's decision to ignore plaintiff's AS in

denying his disability claim was arbitrary and capricious and therefore not rational. Additionally, plaintiff argues that the years of administrative and judicial challenges weigh in favor of granting attorney's fees and costs under EAJA.

The government argues that the APDRB's conduct was substantially justified because it properly examined the facts and arrived at a reasonable conclusion.  The government contends that plaintiff changed his position about whether his AS pre-existed his service between the Medical Evaluation Board and Physical Evaluation Board ("PEB") stages of the process.  The government argues that the PEB properly relied on medical literature in its findings, which the APDRB properly accepted.  Regarding its conduct on remand, the government argues that the APDRB properly considered the limited evidence about AS—as required by the court—as well as the fuller evidence of plaintiff's back pain in general.  The government contends that its motion for a voluntary remand was also reasonable.

Where, as here, the government loses its case on the merits, it bears the burden of showing that its position was "substantially justified."  See, e.g., White v. Nicholson, 412 F.3d 1314, 1315 (Fed. Cir. 2005); Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 702-03 (2010) (finding that the government's position was not substantially justified where government conduct directly contravened the parties' contract); see also Doty v. United States, 71 F.3d 384, 385 (Fed. Cir. 1995).  The government's "position" that must be substantially justified encompasses the entirety of its conduct, including both agency-level action and the litigation.  Doty, 71 F.3d at 386; Standard Commc'ns, Inc. v. United States, 106 Fed. Cl. 165, 172 (2012).  In this context, substantially justified means

"justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Indeed, a position may be substantially justified even if it is wrong.  Hyperion, Inc. v. United States, 118 Fed. Cl. 540, 545 (2014) (citing Manno v. United States, 48 Fed. Cl. 587, 589 (2001)).

The court finds that overall the government has failed to meet its burden that its position was substantially justified with regard to plaintiff's disability claim based on his AS.  The government's positions with regard to the denial of back pay and of a disability award based on plaintiff's wrist pain and plantar fasciitis were justified.  However, because the central issue in this case was whether plaintiff was entitled to a disability award following his discharge based on his AS diagnosis, the government cannot prevail.  Specifically, the government was not justified in its decision to ignore plaintiff's AS on remand and instead change the rationale for its decision.  The new rationale—that plaintiff's symptom of back pain pre-existed his service and was alone sufficient to deny him compensation—was not supported.  First, it ignored the Army's decision to discharge plaintiff based on his AS; the Army's findings early in plaintiff's career that his back pain was not caused by AS; and the fact that plaintiff had passed multiple physical fitness tests through at least 2002 without any mention of back pain.  Moreover, the APDRB issued its new decision without providing plaintiff with the opportunity to respond, as required by the court.  This conduct was unreasonable, both in its adoption of a new rationale belied by the record evidence and its disregard for the instructions given by the court for the remand.

When a court determines that the government's position is substantially justified only in part, it must then determine whether the positions that are not substantially justified "were 'substantially dramatic in impact' to justify an award of fees." Greenhill v. United States, 96 Fed. Cl. 771, 777 (2011) (quoting Precision Pine & Timber, Inc. v. United States, 83 Fed. Cl. 544, 551-53 (2008); Loomis v. United States, 74 Fed. Cl. 350, 355 (2006)).  Here, the court finds that the government failed to support its contentions that plaintiff's AS was hereditary, that the AS pre-existed his service, and that the true cause of his discharge was back pain.  The failure to present a substantially justified position on these issues was at the core of this case and warrant an award of attorney's fees and costs under EAJA.

**B.      Plaintiff's Requested Attorney's Fees and Costs Must be Reduced**

Having determined that plaintiff is entitled to attorney's fees and costs sought pursuant to EAJA, the court now turns to the question of the proper calculation of that amount.  This includes three elements: (1) the hourly rate, (2) the reasonableness of the hours expended, and (3) plaintiff's success on the merits.

**1.      Hourly Rate**

While EAJA fees are capped by statute at an hourly rate of $125, courts may permit increases for cost of living or other special factors.  28 U.S.C. § 2412(d)(2)(A)(ii).

In this case, there is no dispute that plaintiff is entitled to an upward cost of living adjustment to an hourly rate of $179.65.[2]

### 2.      Allowable Hours and Costs

The government seeks to reduce plaintiff's fee award based on (1) plaintiff's limited overall success—considering the court's finding that plaintiff waived his claims regarding plantar fasciitis and a wrist injury, as well as the denial of plaintiff's requests for restoration to active duty and for back pay—and (2) certain hours that the government contends are excessive.  Plaintiff also seeks additional fees for work performed in seeking EAJA fees.

As an overall matter, the government argues that the fees should be limited to the amount that plaintiff actually paid for representation.  The government states that the actual amount paid is unknown, but that plaintiff's counsel publicly advertises a total cost of $14,000 to $20,000, with the possibility of a contingency fee or a mixed flat and contingency fee arrangement in some cases.  Thus, the government contends that EAJA fees should be capped at $20,000 unless plaintiff demonstrates that the actual amount paid to plaintiff's counsel was higher.

---

[2] While plaintiff initially sought a further increase to an hourly rate of $225, he conceded in his reply that only a cost of living adjustment is permissible in this case.

In response, plaintiff argues that nothing in EAJA requires that the fees granted be capped at the amount actually paid to counsel.  Plaintiff argues that where, as here, counsel has provided records of the hours for which fees are sought, such a cap is inappropriate.

Regarding specific reductions, the government argues that the hours worked are excessive and should be reduced or denied.  First, the government contends that 6.3 hours of work from August 28-29, 2014 on the parties' joint status report should be reduced to 1 hour in light of the fact that the stipulation of dismissal several months later made that work unnecessary.  Second, the government contends that 4.5 hours of work on October 23, 2013 for email correspondence about a Board of Veterans Appeals decision is excessive both in the time spent and the lack of relevance to this litigation.  Third, the government argues that .5 hours of work on December 4-5, 2014, to review the order of dismissal and judgment of dismissal following the parties' stipulation of dismissal is excessive, as the entries are each one sentence and were expected by the parties.

In response, plaintiff argues that the government ignores information that makes the fees sought reasonable.  As an initial matter, plaintiff argues that plaintiff's counsel exercised considerable billing judgment and had reviewed time-keeping records and reduced the hours sought prior to filing this application.  Plaintiff contends that the records already "excluded much, indeed an extreme amount, of the time spent that could have been claimed," and attaches numerous emails for which no fees are sought.  Pl.'s Reply 7-8.  Regarding the 6.3 hours, plaintiff argues that the government ignores the phone calls and emails with the government regarding the drafting of the joint status

report, of which it would have had personal knowledge.  Regarding the 4.5 hours,

plaintiff argues that the fact that the Board of Veterans Appeals decision did not turn out

to be relevant does not meant that it was unreasonable for counsel to review the

document for potential importance to this case.  Finally, regarding the .5 hours, plaintiff

argues that counsel did expend that amount of time, which includes obtaining the

documents, researching the rules on EAJA fees, and notifying plaintiff of the

developments.

Plaintiff also claims he is entitled to an additional $3,970.26 for fees incurred

seeking an award under EAJA.  According to plaintiff, 22.1 hours were expended by

counsel in seeking fees.

After reviewing the time reports and documents submitted by plaintiff, the court

finds that plaintiff is entitled to the hours sought except for the 4.5 hours spent reviewing

an irrelevant decision.  These hours were excessive as plaintiff should have been able to

discern far more quickly whether the case was relevant.  Accordingly, plaintiff is entitled

to only .5 hours for this review.  Plaintiff has provided a reasonable explanation as to why

the other amounts are not excessive.  Further, plaintiff is entitled to fees associated with

the EAJA application, to the extent that he "successfully defends his original fee

application."  Wagner v. Shinseki, 640 F.3d 1255, 1259-60 (Fed. Cir. 2011) (citing Fritz

v. Principi, 264 F.3d 1372, 1377 (Fed. Cir. 2001)).

Regarding a cap on an EAJA award based on the fees actually paid to plaintiff's

counsel, the court finds that an award "under EAJA is 'not necessarily contingent upon

an obligation to pay counsel.'"  Greenhill, 96 Fed. Cl. at 776 (quoting Ed A. Wilson, Inc.

v. Gen. Servs. Admin., 126 F.3d 1406, 1409 (Fed. Cir. 1997)) (citing Rodriguez v.

Taylor, 569 F.2d 1231, 1245 (3d Cir. 1977), found as dicta on other grounds by Kunda v.

Muhlenberg Coll., 621 F.2d 532, 541 n.3 (3d Cir. 1980)).  This includes plaintiffs who

are represented pro bono, Wilson, Inc., 126 F.3d at 1409 (citing Watford v. Heckler, 765

F.2d 1562, 1567 n.6 (11th Cir. 1985); Cornella v. Schweiker, 728 F.2d 978 (8th Cir.

1984)), plaintiffs who appear pro se, id. (citing Jones v. Lujan, 883 F.2d 1031 (D.C. Cir.

1989)), and plaintiffs whose contingent fee arrangement meant that they were only

obligated to their counsel for a portion of the fee awarded, id (citing Phillips v. Gen.

Servs. Admin., 924 F.2d 1577 (Fed. Cir. 1991)).  Instead, a plaintiff must only

demonstrate that attorney's fees and costs were "incurred," as required by EAJA, on the

plaintiff's behalf.  Id. (quoting Goodrich v. Dep't of the Navy, 733 F.2d 1578 (Fed. Cir.

1984)).  That is not to say that courts may never cap an EAJA award based on the

agreement between plaintiff and plaintiff's counsel: the government points the court to

KMS Fusion, Inc. v. United States, in which the court distinguished Phillips on the

grounds that the contingency fee at issue had not actually reached the conditions required

to activate it.  39 Fed. Cl. 593, 604-05 (1997).  In this case, however, the government

makes no such argument, and instead argues that there is a general cap on EAJA awards.

The court finds that the precedent does not support this argument.  Plaintiff is therefore

entitled to an appropriate EAJA award regardless of the actual fee arrangement.

### 3.    Reduction to Reflect Partial Success on the Merits

The government argues that an EAJA award must be reduced to reflect plaintiff's

limited success on the merits in this case.  Specifically, plaintiff sought a disability rating

of 30% to 100% as a result of AS, a wrist condition, and plantar fasciitis, as well as reinstatement and back pay while his disability claim was under review. Ultimately, the only relief that plaintiff obtained was a 10% rating for his AS. Accordingly, the government contends that a reduction in the EAJA award of at least 50% is required to account for the issues on which plaintiff was not successful.

Plaintiff disputes the characterization of his success as limited. Plaintiff contests the government's statement that Mr. Wollman's rating was changed from 0% to 10%, arguing that the actual change was from non-compensable—which does not include severance pay, whereas a 0% rating does—to 10%. Plaintiff argues that this severance pay is $72,048, subject to adjustments by the Defense Financial Accounting Service. Plaintiff argues that a finding of a compensable condition allows him to seek a retirement finding, which would include retroactive payment of at least $145,307.88—based on a 30% rating, which is the minimum required for recurring payments—as well as continuing monthly payments and health care coverage. Further, plaintiff argues that the various remedies sought are all related to the same claim, and therefore the EAJA award should not be reduced because the court did not grant every remedy sought.

The court finds that a reduction in the EAJA award is appropriate based on plaintiff's limited success. Plaintiff sought relief regarding three separate injuries, but the court found that he had waived his ability to challenge the APDRB's decision on two of the three and was not legally entitled to reinstatement and back pay. Thus, regardless of the success on the remaining one injury, plaintiff was successful on only one of his claims. On that remaining one injury, his AS, plaintiff succeeded in obtaining some

relief, though at a lower rating than he sought.  Moreover, while plaintiff argues that this rating is an important first step in obtaining a much larger award in the future, such an argument is speculative at this stage.

A court may reduce fees in accordance with the ratio of successful claims.  Dalles, 91 Fed. Cl. at 704 (reducing EAJA award by three sevenths where plaintiff prevailed on three of seven claims).  However, it is important to consider that some claims require additional effort on the part of plaintiff's counsel.  Comty. Heating & Plumbing Co. v. Garrett, 2 F.3d 1143, 1146 (Fed. Cir. 1993) (awarding 30% of requested fees where 30% of time was spent on prevailing issue, even though it was only one of six).  In this case, while plaintiff was only successful on one of his claims, 100% of plaintiff's counsel's time after the first opinion was spent on the prevailing claim.[3]  Accordingly, the court finds that a reduction of 50% is appropriate to account for plaintiff's success on one out of three of his claims and the increased time spent on the successful claim.

## IV.    CONCLUSION

In light of the foregoing, plaintiff's application is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The Clerk is directed to enter judgment in favor of plaintiff in the amount of $25,226.20, which includes $24,647.98 in attorney's fees and $578.22 in costs.

**IT IS SO ORDERED.**

---

[3] According to plaintiff's submissions, plaintiff's counsel expended 101.2 allowable hours before the issuance of the court's first opinion, 151.1 allowable hours after the opinion, and 22.1 allowable hours related to the EAJA application.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge